UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No: _____

AARON THORNE,

    Plaintiff,

v.

C&I STUDIOS, INC.

    Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, AARON THORNE, by and through his undersigned counsel, sues the Defendant, C&I STUDIOS, INC., and alleges as follows:

## JURISDICTION AND VENUE

1. This is an action for damages and to remedy violations of the rights of MR. THORNE under the Americans with Disabilities Act of 1990, as amended, including the ADA Amendment Act of 2008 ("ADA") and the Florida Civil Rights Act of 1992, as amended ("Chapter 760"), to redress injuries done to him by the Defendant, C&I STUDIOS, INC. ("Defendant").

2. The unlawful acts which gave rise to this Complaint occurred within Broward County, Florida during the Plaintiff's employment with Defendant, making venue proper in this District pursuant to 28 U.S.C. § 1391.

## PARTIES

3. At all times material hereto, Plaintiff has been a citizen and resident of Broward County, Florida and is otherwise *sui juris*.

1

4. At the relevant time, Plaintiff was a disabled man, and, as such, Plaintiff is a member of a protected class under the ADA and Chapter 760 because the terms, conditions, and privileges of his employment were altered because of his disability.

5. Defendant is not a government agency. At all times material hereto, Defendant was Plaintiff's employer as defined by law.

6. Defendant has, at all times material hereto, employed 15 or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year.

7. Plaintiff has exhausted his administrative remedies by filing a timely charge of discrimination against the Defendant with the Equal Employment Opportunity Commission, which was dually filed with the Florida Commission on Human Relations.

8. Plaintiff's charge was filed within 300 days after the first instance of discrimination occurred.

9. Plaintiff was issued a Notice of Right to Sue on March 10, 2021. This suit is filed in accordance with that Notice and within the applicable ninety (90) day limitation (a copy of the Notice is attached hereto as Exhibit "A").

10. The Florida Commission on Human Relations did not issue a finding on Plaintiff's charge within 180 days of the filing of said charge.

**GENERAL ALLEGATIONS COMMON TO ALL COUNTS**

11. Defendant hired Plaintiff as a Grip in October 2018. Plaintiff worked for the Defendant until he was wrongfully terminated on November 21, 2019.

12. As a Grip, Plaintiff's primary duties and responsibilities included manual labor and serving in a supporting role for camera operators.

13. The Plaintiff was qualified for his position as a Grip based on his experience and training.

14. The Plaintiff has a disability: bipolar manic disorder-type 1 and depression.

15. When the Defendant hired the Plaintiff, he advised Mr. Joseph Miller, General Manager, that he had a doctor's appointment. Mr. Joseph Miller requested documentation. The Plaintiff uploaded the paperwork for his appointment to the Defendant's online system. Human Resources approved the Plaintiff's one appointment.

16. In August or September 2019, the Defendant hired Mr. Rocco Rofarro, camera operator.

17. In September 2019, the Plaintiff and Mr. Rofarro were in an elevator and the Plaintiff was holding a dolly cart. Mr. Rofarro demanded that the Plaintiff hold the dolly cart a certain way. The Plaintiff said that he was fine. Mr. Rofarro again aggressively demanded that the Plaintiff hold the dolly cart a certain way. Plaintiff again said that he was fine. A female client was in the elevator and said, "I am not getting into this." When the elevator opened, the Plaintiff apologized to the woman and said, "I am sorry for what just happened."

18. Mr. Rofarro regularly belittled the Plaintiff. The Plaintiff would say something, and Mr. Rofarro would respond, "that is retarded." This occurred numerous times each day.

19. In September 2019, the Plaintiff, Mr. Rofarro, Mr. Joshua Miller, Chief Executive Officer, and Ms. Beth Bryant, Vice President, were all in a car together driving to New York City for work. They got to their destination, and everyone got out the car. The Plaintiff stayed outside at the car to watch the gear. Mr. Rofarro walked towards the car, sat in the driver's seat, and sped off leaving the Plaintiff behind. The Plaintiff did not know where he was going. A few minutes later, Mr. Rofarro called the Plaintiff and started screaming to "get to the car now." Mr. Rofarro

was at the end of the street because he was having issues with the car. The Plaintiff got in the passenger side seat and Mr. Rofarro started screaming, "don't fuck with me, you don't know who the fuck I am." The Plaintiff did not know what he was talking about or referring too. The Plaintiff responded, "this is a professional environment, stop screaming." The interaction aggravated Plaintiff's disability.

20. In September 2019, the Defendant held a meeting about office etiquette with Plaintiff, Mr. Joshua Miller, Ms. Bryant, and Mr. Rofarro. While it was obvious from the topic that the meeting was about Mr. Rofarro, the Defendant did not identify anyone in particular.

21. In September 2019, the Plaintiff was in New Jersey for work. The Plaintiff, Mr. Rofarro, Mr. Joshua Miller, and a makeup artist were eating at a restaurant. Mr. Rofarro got into a confrontation with the female waitress along with other staff members. This situation aggravated the Plaintiff's disability and made him uncomfortable.

22. Towards the end of September 2019, the Plaintiff, Mr. Rofarro, Katie, camera operator and other crew members were putting up gear. Mr. Joshua Miller requested that everyone put their gear on the table and directed the Plaintiff to grab the gear and put it in the truck. The Plaintiff started to grab the gear from the table, but Mr. Rofarro started screaming at him and demanding to know what he was doing. The Plaintiff explained that he was doing what Mr. Joshua Miller instructed him to do and asked that Mr. Rofarro stop screaming at him. Ms. Bryant intervened and told everyone to relax. As the day went on, the Plaintiff told Mr. Mark Samuels, Editor/Director, how Mr. Rofarro had been treating him. Mr. Samuels then relayed the information Mr. Joshua Miller who called for a meeting. The Defendant discussed tools to effectively communicate at the meeting. At the meeting, Mr. Rofarro threatened to quit, and Mr. Joshua Miller responded, "no, we don't want you to leave. Just work it out."

23. In October 2019, the Plaintiff, Mr. Rofarro, and Katie were in the car on the way to holiday park for the Everglades shoot. Mr. Rofarro asked the Plaintiff for a camera. The Plaintiff responded that he did not bring it as usually that was the responsibility of the camera operator. Mr. Rofarro said, "you are retarded" and began to scream at the Plaintiff. The Plaintiff responded, "do not call me retarded." The Plaintiff was so upset that he began to punch the glove department and said, "I am tired of you disrespecting me." Amy Miller, Producer, happened to call Katie during the argument and overheard everything. Ms. Miller said, 'you guys better act professionally."

24. Towards the end of October 2019, the Plaintiff was back in New York City on a shoot. The Plaintiff was texting his wife and saying how exhausted he was due to traveling a lot with the Defendant and not getting enough sleep. In error, the Plaintiff sent a text to the Defendant's group chat and said something to the effect of, "let me live my fucked-up life." Ms. Miller responded in the group text and asked if the Plaintiff was okay. The Plaintiff responded that he was and that he had texted in the wrong message thread. Mr. Joshua Miller and Ms. Bryant then walked over to the Plaintiff to talk to him in person. The Plaintiff admitted that he was tired and exhausted from working excessively and suffered from bipolar disorder. They talked further about the Plaintiff having a lapse in his health insurance. Mr. Joshua Miller said that once everyone got back to the office, they would work something out for the Plaintiff regarding his health insurance. During this same conversation, the Plaintiff asked for an accommodation; specifically a rotational schedule because his bipolar disorder worsened when he did not get sufficient rest and the Plaintiff had been working and traveling every weekend. The Plaintiff told Mr. Joshua Miller that he needed to get some rest and get his health back. Mr. Joshua Miller responded that they would discuss it later.

25. Mr. Joshua Miller the went on the company's internal communication and "facebook" platform and reprimanded the Plaintiff in retaliation for his requested accommodation. Mr. Joshua Miller posted, "how can you keep this from me?" referring to the Plaintiff's disability. All of the senior level employees of the Defendant saw the post. Mr. Joshua Miller tagged the Plaintiff and the General Manager. Mr. Joshua Miller went on the Plaintiff's page and changed all of the Plaintiff's accomplishments to "not completed" or "below average." The Plaintiff opted not to say anything. Not long after, when the Plaintiff was working, Mr. Joshua Miller came up to the Plaintiff and said, "so you are not going to respond to my posts?" Mr. Joshua Miller demanded that the Plaintiff go online and respond to the posts. The Plaintiff went online and replied to the post and said that all he wanted was an accommodation of a rotational schedule. The Plaintiff mentioned that the work conditions had been poor and that he often had to fend for himself for food while traveling for the Defendant because his pay was low. Mr. Joshua Miller responded and called the Plaintiff a liar. Then he called the Plaintiff and asked him why he was being passive aggressive. Mr. Joshua Miller said that he was going to send the Plaintiff back to Florida. On this call, the Plaintiff was so upset that he mentioned wanting to kill himself.

26. When the Plaintiff returned to Florida, Mr. Joseph Miller and Ms. Miller met with the Plaintiff and said that they were going to give him some time to rest and that he could return to work on November 5, 2019 after a few days off.

27. On November 5, 2019, the Plaintiff returned to work. He went on the company platform to respond to all the posts since he was rested and able to think clearer. The Plaintiff posted that he was being harassed and retaliated against. For the second time, the Plaintiff requested an accommodation - a rotational schedule. Mr. Joshua Miller immediately deleted the Plaintiff's post and logged him out of the account. Then Mr. Joseph Miller and Ms. Bryant came

to the editor's office and requested to speak with the Plaintiff. They gave the Plaintiff a fit for duty form and said that he had 15 days to complete it. The Plaintiff went to his psychiatrist and his psychiatrist submitted paperwork as well as a letter stating that the Plaintiff needed an accommodation. All of the paperwork was provided to the Defendant.

28. Fifteen days later, the Plaintiff went to work but security did not allow him in.

29. On November 21, 2019, the Defendant sent the Plaintiff a letter terminating his employment.

30. Plaintiff has engaged the undersigned attorney to prosecute his claims and is entitled to recover his attorney's fees from Defendant pursuant to statute.

### **COUNT I: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990 ("ADA")**
**(Discrimination on the Basis of Disability)**

31. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 30, inclusive, as though same were fully re-written here.

32. The ADA forbids discrimination based on disability; prohibiting discrimination in employment, public services, public accommodations, and telecommunications.

33. Plaintiff has a disability as that term is defined under the ADA, and, therefore, is a member of the protected class.

34. At all relevant and material times, Defendant failed to comply with the ADA, which states in relevant part: (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities; (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and (4) to invoke the sweep of

congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

35. At all times relevant hereto, Defendant regarded Plaintiff as an individual with a disability and/or an individual with a record of having a disability.

36. At the time of the unlawful discrimination, Plaintiff did perform and excel at the performance of the essential functions assigned to him by Defendant.

37. Plaintiff was qualified for the position.

38. Defendant is a large privately-owned business, and therefore a sophisticated employer who has actual knowledge of the requirements of the ADA, as amended.

39. The failure of Defendant to adhere to the mandates of the ADA was willful and its violations of the provisions of the ADA were willful.

40. The Defendant's failure to stop an employee from discriminating against the Plaintiff and later denying his request for a reasonable accommodation, thus failing to engage in the interactive process, demonstrates the Defendant's lack of adherence to its policy against discrimination and failure to comply with the law on disabilities and reasonable accommodations.

41. Because the Plaintiff had a disability, Defendant, through its employees, disclosed and mocked the Plaintiff's disability. Specifically, Mr. Rofarro regularly referred to the Plaintiff as "retarded." Specifically, Mr. Joshua Miller wrote on the Defendant's social media website, "why didn't you tell me," indirectly disclosing the Plaintiff's disability.

42. Any allegedly nondiscriminatory reason for the Defendant's treatment and failure to reasonably accommodate Plaintiff is a mere pretext for the actual reasons for the Defendant's treatment and failure to reasonably accommodate Plaintiff; inter alia Plaintiff's disability.

43. Upon information and belief, the Defendant does not mock non-disabled employees and allows non-disabled employees to take time off (i.e. rotational schedule).

44. As a result of Defendant's violation, Plaintiff has suffered damages.

45. Defendant's actions were malicious and were recklessly indifferent to Plaintiff's rights protecting persons from discrimination due to his disability.

46. As a direct and proximate result of the intentional and discriminatory acts and practices of the Defendant, and/or its employees, Plaintiff suffered injury and continues to suffer injury including past and future loss of income and other employment benefits, emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to his reputation, and other past and future pecuniary losses.

WHEREFORE, Plaintiff hereby requests this Court enter judgment against Defendant for all wages and benefits the Plaintiff would have received but for the discrimination, including actual damages suffered, loss of benefits, compensatory damages for emotional distress, punitive damages prejudgment and post-judgment interest on his damages award, attorney's fees, costs, and such other and further relief as this Court deems just and appropriate.

### COUNT II: VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992
**(Discrimination on the Basis of Disability)**

47. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 30, inclusive, as though same were fully re-written here, and says:

48. The FCRA forbids discrimination on the basis of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status and thereby to protect their interest in personal dignity, to make available to the state their full productive capacities, to secure the state against domestic strife and unrest, to preserve the public safety, health, and general welfare, and to promote the interests, rights, and privileges of individuals within the state.

49. Plaintiff has a disability as that term is defined in the FCRA, and therefore, is a member of a protected class.

50. At all relevant and material times, Defendant failed to comply with the FCRA.

51. At all times relevant hereto, Defendant regarded Plaintiff as an individual with a disability and/or an individual with a record of having a disability.

52. At the time of the unlawful discrimination, Plaintiff did perform and excel at the performance of the essential functions assigned to him by Defendant.

53. The failure of Defendant to adhere to the mandates of the FCRA was willful and its violations of the provisions of the FCRA were willful.

54. Defendant, through its practices and policies as an employer, willfully, and with malicious or reckless disregard of Plaintiff's protected rights, discriminated against Plaintiff on account of his disability in violation of the FCRA.

55. The Defendant's failure to stop an employee from discriminating against the Plaintiff and later denying his request for a reasonable accommodation, thus failing to engage in the interactive process, demonstrates the Defendant's lack of adherence to its policy against discrimination and failure to comply with the law on disabilities and reasonable accommodations.

56. Because the Plaintiff had a disability, Defendant, through its employees, disclosed and mocked the Plaintiff's disability. Specifically, Mr. Rofarro regularly referred to the Plaintiff as "retarded." Specifically, Mr. Joshua Miller wrote on the Defendant's social media website, "why didn't you tell me," which indirectly disclosed the Plaintiff's disability.

57. Because the Plaintiff had a disability, Defendant, through its employees, disclosed and mocked the Plaintiff's disability.

58.   Any allegedly nondiscriminatory reason for the Defendant's treatment and failure to reasonably accommodate Plaintiff is a mere pretext for the actual reasons for the treatment and failure to reasonably accommodate Plaintiff; inter alia Plaintiff's disability.

59.   Upon information and belief, the Defendant does not mock non-disabled employees and allows non-disabled employees to take time off (i.e. rotational schedule)

60.   Defendant's actions were malicious and were recklessly indifferent to Plaintiff's rights protecting persons from discrimination due to his disability. The discrimination on the basis of disability constitutes unlawful discrimination.

61.   As a result of Defendant's violation of the FCRA, Plaintiff has suffered damages.

62.   As a direct and proximate result of the intentional and discriminatory acts and practices of the Defendant, and/or its employees, Plaintiff suffered injury and continues to suffer injury including past and future loss of income and other employment benefits, emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to his reputation, and other past and future pecuniary losses.

WHEREFORE, Plaintiff hereby requests this Court enter judgment against Defendant for all wages and benefits the Plaintiff would have received but for the discrimination, including actual damages suffered, compensatory damages under the FCRA for emotional distress, punitive damages, prejudgment and post-judgment interest on his damages award, attorney's fees, costs, and such other and further relief as this Court deems just and appropriate.

### **COUNT III: VIOLATION OF ADA**
### **(Retaliation)**

63.   Plaintiff incorporates herein the allegations contained in paragraphs 1 through 30, inclusive, as though same were fully re-written here.

64.   Plaintiff suffered from a disability as that term is defined under the ADA.

65. At all times relevant hereto, Defendant regarded Plaintiff as an individual with a disability and/or an individual with a record of having a disability.

66. Defendant is an employer as that term is defined under the ADA.

67. Plaintiff had the right to voice his grievances that he was being discriminated against.

68. When the Plaintiff engaged in the protected activity of voicing his concerns regarding the discrimination and requesting a reasonable accommodation, the Defendant retaliated against him by sending him home and ultimately terminating his employment.

69. As a result of Defendant's violation, Plaintiff has suffered damages.

70. Defendant's actions were malicious and were recklessly indifferent to Plaintiff's rights protecting persons from discrimination due to his disability.

71. As a direct and proximate result of the intentional and discriminatory acts and practices of the Defendant, and/or its employees, Plaintiff suffered injury and continues to suffer injury including past and future loss of income and other employment benefits, emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to his reputation, and other past and future pecuniary losses.

WHEREFORE, Plaintiff hereby requests that this Court enter judgment in his favor against the Defendant by awarding actual damages, compensatory damages, front pay, back pay, punitive damages, prejudgment and postjudgment interest, attorneys' fees and costs, and such other and further relief as this Court deems just and appropriate.

### COUNT IV: VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992
**(Retaliation)**

72. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 30 inclusive, as though same were fully re-written here.

73. Plaintiff had the right to voice his grievances that he was being discriminated against.

74. When the Plaintiff engaged in the protected activity of voicing his concerns regarding the discrimination and requesting a reasonable accommodation, the Defendant retaliated against him by sending him home and ultimately terminating his employment.

75. As a result of Defendant's actions, Plaintiff has suffered damages

76. Defendant's actions were malicious and were recklessly indifferent to Plaintiff's rights protecting persons from discrimination due to his disability.

77. Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of the FCRA, Chapter 760.

WHEREFORE, Plaintiff hereby requests that this Court: (a) declare that Defendant's termination of Plaintiff was in violation of the FCRA; (b) grant Plaintiff judgment against Defendant to compensate him for past and future pecuniary losses, including injury to him professional reputation, and emotional pain and suffering caused by Defendant's termination of Plaintiff in an amount to be determined at trial and in accordance with the FCRA; (c) award Plaintiff prejudgment and post-judgment interest; (d) award Plaintiff compensatory and punitive damages as permitted by law; (e) award Plaintiff the costs of this action, together with his reasonable attorneys' fees incurred herein; and (f) grant Plaintiff such other and further relief as the Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 8th day of June, 2021

By: /s/ *Michelle Cohen Levy*
Michelle Cohen Levy, FBN 0068514
The Law Office of Michelle Cohen Levy, P.A.
4400 N. Federal Highway
Lighthouse Point, Florida 33064
P: (954) 651-9196
Michelle@CohenLevyLegal.com
Counsel for Plaintiff